```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES FOR THE MASON TENDERS          :
DISTRICT COUNCIL WELFARE FUND,          :
PENSION FUND, ANNUITY FUND, AND         :
TRAINING PROGRAM FUND, and JOHN J.      :
VIRGA, in his fiduciary capacity as Director, and :
ROBERT BONANZA, as Business Manager of  :
the MASON TENDERS DISTRICT COUNCIL      :     15-CV-10000 (JPO)
OF GREATER NEW YORK,                    :
                                        :     OPINION AND ORDER
                            Plaintiffs, :
                                        :
              -v-                       :
                                        :
ONE TEN RESTORATION CORP.,              :
                                        :
                            Defendant.  :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program (the "Funds"), John J. Virga, Director of the Mason Tenders District Council of Greater New York (the "Union"), and Robert Bonanza, Business Manager of the Union (together "Plaintiffs") bring this action under section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, seeking to confirm a default arbitration award against Defendant One Ten Restoration Corp. ("One Ten"). One Ten opposes the motion to confirm arbitration, arguing that it had insufficient notice of the arbitration and, in the alternative, that the arbitration award is substantively flawed. For the reasons that follow, Plaintiffs' motion to confirm arbitration is granted.

**I.     Background**

The following facts are, unless otherwise noted, uncontested and taken from Plaintiffs' 56.1 Statement. (Dkt. No. 21.)

Mason Tenders District Council of Greater New York (the "Union") is a labor organization.  (Dkt. No. 21 ¶ 2.)  The Union is represented in this action by Plaintiffs Virga and Bonanza.  (Dkt. No. 1.)

Plaintiff Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program (the "Funds") is made up of "employer benefit plan[s]" and "multiemployer plan[s]," as defined by ERISA, 29 U.S.C. §§1002(3), (37)(A).  (Dkt. No. 21 ¶ 1.)  An Amended and Restated Agreement and Declaration of the Trust (the "Trust Agreements") establish and maintain the Funds.  (*Id.*)  The Funds provide fringe benefits to employees, for whom employers contribute to the Funds under the terms of collective bargaining agreements between those employers and the Union.  (*Id.*)

Defendant One Ten is a contractor, an "Employer" as defined by the Trust Agreements, and a signatory to the New York City School Construction Authority Project Labor Agreement ("SCA PLA") and an Independent Collective Bargaining Agreement ("CBA") with the Union.  (*Id.* ¶¶ 4-9; *see* Dkt. No. 20-1.)  The SCA PLA and the CBA obligate One Ten to pay wages and benefit contributions to the Funds, to pay dues, and to make contributions to an affiliated political action committee ("PAC"); they further bind One Ten to the Trust Agreements.  (Dkt. No. 21 ¶¶ 7, 9, 12; *see* Dkt. No. 20-3, Ex. 2.)  The Trust Agreements, in turn, provide that the Funds may take steps to collect delinquent contributions (as defined in the SCA PLA and the CBA), including instituting legal or administrative proceedings.  (Dkt. No. 21 ¶ 10; Dkt. No. 20-3, Ex. 2 at 38.)  The Trust Agreements allow the Funds' representatives to audit an employer when necessary to ensure that it has made all required payments and contributions, and further provide that if an employer is found to be substantially delinquent in the payment of contributions, the employer "bear[s] the costs of the audit." (Dkt. No. 21 ¶ 11; Dkt. No. 20-3, Ex. 2 at 39.)

When an employer is delinquent in payments and contributions, the Trust Agreements and the correlative "Arbitration Procedures and Rules" (*see* Dkt. No. 20-3, Ex. 2 at 39; Dkt. No. 20-3, Ex. 3), as well as the CBA, provide that the Funds may initiate a binding arbitration proceeding (Dkt. No. 21 ¶ 13; Dkt. No. 20 ¶¶ 16-17). In such proceedings, the Trust Agreements provide that an employer may be responsible for all unpaid contributions, interest on these contributions, interest on these contributions as liquidated damages, attorney's fees and costs of the action, and other legal or equitable relief where "appropriate." (Dkt. No. 21 ¶ 14; Dkt. No. 20-3, Ex. 2 at 39-40.) The Arbitration Procedures and Rules explicitly authorize statutory damages under ERISA. (Dkt. No. 20-3, Ex. 3 at 5.)

This action arises from an arbitration initiated by Plaintiffs against One Ten. The Funds started to look into One Ten's records beginning in November 2013, and auditors found that One Ten owed unpaid principal fringe benefits, union dues, and PAC contributions. (Dkt. No. 21 ¶ 15; Dkt. No. 20-4, Ex. 4 at 4-5, 6, 33.) The Funds proceeded, on March 14 and May 16, 2014, to make demands for payment from One Ten by certified mail. (Dkt. No. 21 ¶ 16.) The Funds sent the demands to the address where the audit of One Ten had been carried out: 2366 61st St., Brooklyn, New York. (Dkt. No. 20 ¶ 19-20; Dkt. No. 21 ¶ 16.) The certified mail receipts bear a signature of the addressee's "Agent." (Dkt. No. 20-5, Ex. 5 at 4, 7.) One Ten confirms that 2366 61st St., Brooklyn, had been its address but represents that the business relocated from December 1, 2012 to December 28, 2014, during the period of the audit and all notices related to this matter. (*See* Dkt. No. 25 ¶¶ 9, 13, 17.)

Having received no payment from One Ten, counsel for the Funds sent an additional request for payment to the same address on July 25, 2014, indicating that if One Ten again failed to make payment, the matter would be referred to arbitration "pursuant to the relevant collective bargaining agreement." (Dkt. No. 20-5 at 8; Dkt. No. 21 ¶ 17.) Several months later, One Ten

had still failed to pay.  On November 12, 2014, the Funds forwarded, together with a copy of the Arbitration Procedures and Rules, a "Notice of Intention to Arbitrate" to One Ten and to Arbitrator Joseph A. Harris.  (Dkt. No. 20-5, Ex. 6 at 11; Dkt. No. 21 ¶ 18.)  The certified mail receipt again indicates that an "Agent" received the Notice at 2366 61st St., Brooklyn, on November 13.  (Dkt. No. 20-5, Ex. 6 at 12.)  By first class mail, Arbitrator Harris then notified One Ten (at the same address) that a hearing would be held on December 18, 2014.  (Dkt. No. 20-5, Ex. 7.)

One Ten failed to appear at the hearing.  Noting that the Funds had properly sent a "Notice of Intention to Arbitrate" that "had not been returned," and that he had also mailed the date and time of the arbitration by first class mail which "was not returned," Arbitrator Harris "ruled that the arbitration would proceed as a default hearing."  (Dkt. No. 20-5, Ex. 8 ("Arbitration Opinion") at 2.)

The Funds submitted evidence that they followed the procedures established in the Trust Agreements and the Arbitration Rules and Procedures: They completed an audit; issued a demand for payment by certified mail (and produced evidence that it had been received); and sent a notice of intention to arbitrate (again with evidence that it had been received).  (*Id.*)  The Funds also submitted the auditor's reports and testimony by the Funds' Collection Manager to establish the precise sum of delinquent contributions: $197,142.88 in fringe benefits, dues and PAC, interest, and payroll audit costs as of December 16, 2014; and an additional $687.55 in interest for the period September 1, 2011 to November 30, 2011 for late payment of fringe benefit contributions.  (*Id.*)  The Funds also sought ERISA statutory damages (measured by 20% of the outstanding principal, or $28,855.00) and legal fees of $500.00, pursuant to the Trust Agreements and Arbitration Procedures and Rules.  The Arbitrator entered judgment against the Funds for the sum of these amounts, plus arbitrator fees $1,500.00, totaling $228,625.43.  (*Id.*)

4

Plaintiffs forwarded a copy of the award to One Ten on January 6, 2015.  (Dkt. No. 21 ¶ 22.)  One Ten failed to pay the award.  (*Id.*)  Plaintiffs then filed the instant action on December 23, 2015, along with the motion to confirm the arbitration award.  (*Id.* ¶ 27.)

## II.     Legal Standard

"[T]he court's function in confirming or vacating an arbitration award is severely limited."  *N.Y.C. Dist. Council of Carpenters v. Oneida View Pile Driving Inc.*, No. 14 Civ. 4104, 2015 WL 427006, at *1 (S.D.N.Y. Feb. 2, 2015) (Oetken, J.) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997)).  Courts uphold a challenged award as long as "there is a 'barely colorable justification for the outcome reached.'"  *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO*, 954 F.2d 794, 797 (2d Cir. 1992)).

"[T]he federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes."  *N.Y.C. Dist. Council of Carpenters*, 2015 WL 427006, at *1 (quoting *N.Y.C. Dist. Council of Carpenters v. Gen–Cap Indus.,* No. 11 Civ. 8425, 2012 WL 2958265, at *2 (S.D.N.Y. July 20, 2012)).  "Such an award warrants confirmation as long as it 'draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice.'"  *Id.* (quoting *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.,* 143 F.3d 704, 714 (2d Cir. 1998)).

## III.    Discussion

One Ten challenges the Arbitrator's decision on two grounds: (1) insufficient notice; and (2) lack of detail in Plaintiffs' audits and the Arbitrator's award.  The Court addresses each objection in turn.

A. Notice

First, One Ten challenges Arbitrator Harris's finding that One Ten had received due notice of the arbitration. (Dkt. No. 25 ¶ 10.)

"[T]he relevant inquiry under both the federal and New York arbitration statutes is whether misconduct by the Arbitrator resulted in a denial of 'fundamental fairness.'" *Miss Universe L.P., LLLP. v. Monnin*, 952 F. Supp. 2d 591, 603 (S.D.N.Y. 2013) (Oetken, J.) (quoting *Euromarket Designs, Inc. v. McGovern & Co., LLC*, No. 08 Civ. 7908, 2009 WL 2868725, at *4 (S.D.N.Y. Sept. 3, 2009)). "A 'fundamentally fair hearing' requires that all parties receive notice of the arbitration." *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 445 (S.D.N.Y. 2005) (quoting *Kaplan v. Dunhill, Inc.*, No. 96-0258, 1996 WL 640901, at *5 (S.D.N.Y. Nov. 4, 1996)).

One Ten's arguments are insufficient to overwhelm the presumption that it received multiple forms of notice. "[U]nder general New York law, [ ] the Second Circuit has indicated that mailing a letter creates a presumption that the addressee received it." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) (second alteration in the original) (quoting *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859 (S.D.N.Y. 1995)). By submitting signed receipts of certified mail indicating that two demands of payment and the Notice of Intention to Arbitrate were sent to and received at the address where the audit of One Ten had been carried out (Dkt. No. 20-5 at 4, 7, 11-12), Plaintiffs have invoked this presumption as regards the Notice of Intention to Arbitrate, *Coach, Inc.*, 908 F. Supp. 2d at 432 (accepting FedEx delivery receipts as evidence sufficient to invoke the presumption).[1]

---

[1] One Ten relies on several cases to suggest that Plaintiffs' evidence of mailing of the Notice of Intention to Arbitrate is insufficient to create a presumption of receipt. But these cases are inapposite; they deal with parties that were unable to marshal direct evidence similar to that submitted by Plaintiffs here. *In re Best Payphones, Inc.*, for one, involved mailing of bills by standard rather than certified mail such that there was no available evidence of mailing or receipt apart from affidavits. No. 01 Civ. 15472, 2002 WL 31767796, at *9 (Bankr. S.D.N.Y.

Arbitrator Harris further stated that he "sent . . . notice" of the date of the arbitration to One Ten by first class mail; the letter was "not returned." (Dkt. No. 20-5, Ex. 7; Arbitration Opinion at 2.) The presumption of receipt has thus also been raised with respect to the arbitration's scheduling. *See Gaul v. Chrysler Fin. Servs. Americas LLC*, No. 13 Civ. 433, 2013 WL 3828549, at *2 (N.D.N.Y. July 23, 2013), *aff'd*, No. 15 Civ. 1337, 2016 WL 3582822 (2d Cir. July 1, 2016); *see also Trustees of the Mason Tenders Dist. Council Welfare Fund v. Sukhmany Constr., Inc.*, No. 15 Civ. 7200, 2016 WL 3659925, at *2 (S.D.N.Y. July 1, 2016) (accepting first-class mailing by Arbitrator Harris as sufficient notice to proceed as a default hearing); *Trustees for The Mason Tenders Dist. Council Welfare Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967, 2016 WL 1064625, at *2 (S.D.N.Y. Mar. 15, 2016) (same).

Where a party has presented sufficient evidence to raise the presumption that a mailing was received, "[m]ere denial of receipt is insufficient to rebut the presumption." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010). In an affidavit, Amjad Mazir, the "sole owner and president" of One Ten, represents that not only he and his wife but also the business moved out of the 2366 61st St., Brooklyn address on December 1, 2012, and returned on December 28, 2014, thus apparently missing the notices sent there by Plaintiffs and Arbitrator Harris. (Dkt. No. 25 ¶ 9.) One Ten submits a single utility bill for November 2014 with the name of Mazir's wife to demonstrate that it had relocated to another address. (Dkt. No. 25-1; Dkt. No. 25 ¶¶ 8, 12-13.) However, One Ten has presented no direct evidence that the *business* moved. (And One Ten does not dispute that the audit, which listed 2366 61st St., Brooklyn, as the address of the business, took place during the period when it represents that the

---

Dec. 11, 2002). And the court in *New York Presbyterian Hosp. v. Allstate Insurance Co.* determined that a print-out confirmation that certified mail was *sent* was insufficient evidence without a "signed certified mail return receipt card," which has been produced here. 29 A.D.3d 547, 547-48 (N.Y. App. 2d Dep't 2006).

property was "empty, and no one was living at the house or conducting business" there. (Dkt. No. 25 ¶ 13.)) One Ten's rebuttal thus boils down to Mazir's statement in his affidavit that "[m]y business office also moved," a mere denial of receipt that is legally insufficient. (Dkt. No. 25 ¶ 9.)

Even assuming that Mazir's evidence that his wife had moved during the relevant period supported his representation that the business moved, One Ten does not represent that it notified Plaintiffs—or anyone—of this change of address. Where a business has "not notified anyone of a change of address, . . . the corporation [is deemed] still present at the premises" for the purposes of notice of arbitration. *N.Y.C. Dist. Council of Carpenters Pension Fund v. G & M Drywall Sys. Inc.*, No. 07 Civ. 1969, 2010 WL 2291490, at *3 (S.D.N.Y. June 1, 2010); *see also Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, No. 15 CIV. 0781, 2016 WL 3194370, at *5 (S.D.N.Y. June 6, 2016); *Papayiannis v. Zelin*, 205 F. Supp. 2d 228, 232 (S.D.N.Y. 2002). One Ten has therefore failed to overcome the presumption that he received due notice of the arbitration.

One Ten appears to further dispute Arbitrator Harris's finding of procedural adequacy more generally, including some allusion to the *content* of the notice provided by Plaintiffs. (*See* Dkt. No. 26 at 2-3.) The procedures contained in the Trust Agreements and the accompanying Arbitration Procedures and Rules provide a roadmap for referring disputes between these parties to arbitration. (*See* Dkt. No. 20-3, Ex. 2 at 39; Dkt. No. 20-3, Ex. 3 at 3-6.) In order to arbitrate, the Funds must "send[] written request" to the arbitrator and the employer, including a "brief" statement of the issue (Dkt. No. 20-3, Ex. 3 at 3), as Arbitrator Harris found was satisfied here based on Plaintiffs' submissions (Arbitration Opinion at 2; *see* Dkt. No. 20-5, Ex. 5 at 4, 7, 11-12). At that point, the arbitrator must "fix the date and time of the hearing" and "notify the Fund and the Employer," as Arbitrator Harris did here by first class mail. (Dkt. No. 20-3, Ex. 3 at 3;

*see* Dkt. No. 20-5, Ex. 7.) Reviewing all the submissions on the procedures followed by both Plaintiffs and Arbitrator Harris, as well as the reasoning of the Arbitration Opinion itself, the Court finds that the Arbitrator had a sufficient basis to conclude that the operative procedures had been followed and that there was no denial of fundamental fairness here (as would be required to overturn the Arbitrator's decision).

### B.     Arbitration Award

One Ten additionally challenges the substance of the arbitration award, arguing that "[n]either the award nor the audit detail[s] what payments were made" and that "[s]uch a lack of showing is prejudicial and demonstrates that One Ten should be permitted to defend against the award on its merits."  (Dkt. No. 26 at 4.)

The operative Arbitration Procedures and Rules provide that the hearing "shall proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement.  In such case, the award of the Neutral Arbitrator shall be based solely on the evidence provided by the appearing party."  (Dkt. No. 20-3, Ex. 3 at 4.)  *See Smith*, 419 F. Supp. 2d at 445 (describing an analogous standard under AAA rules).

As dictated by the controlling procedures, Arbitrator Harris heard evidence from the present party about what One Ten owed, including testimony from the Funds Delinquency Manager and the auditor's report (Dkt. No. 20 ¶ 25; Dkt. No. 20-4 at 2-13), which, as detailed above, demonstrated specific sums of $144,275.76 in delinquent contributions, $12,143.84 in dues and PAC contributions, $18,065.76 in interest, and $22,658.27 in audit costs (Arbitration Opinion at 2).  The Arbitrator entered judgment in the amount calculated in detail in the auditor's report, as well as ERISA statutory damages, interest for the period September 1, 2011 to November 30, 2011, and attorney and arbitration fees (awards provided for under the terms of the Trust Agreements (*see* Dkt. No. 20-3, Ex. 2 at 39-40; Dkt. No. 20-3, Ex. 3 at 6)).

(Arbitration Opinion at 2.)  His reasoning was sound and based on the evidence presented, in keeping with the procedures provided by the binding agreement.

Moreover, as evidenced by the sums on the last page of the arbitration opinion and default award (Arbitration Opinion at 2), the arbitrator's award is "susceptible of mathematical calculation" and therefore entry of default judgment without inquest is appropriate, *Mason Tenders Dist. Council of Greater N.Y. & Long Island v. Circle Interior Demolition, Inc.*, No. 07 Civ. 11227, 2009 WL 5061744, at *6 n.2 (S.D.N.Y. Dec. 22, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  In a separate case involving Trustees for the Mason Tenders District Council Welfare Fund and One Ten, a court in this District held that substantially similar evidence from an auditor's report provided a sufficient basis to enter judgment upholding an arbitration award.  *See Trustees for the Mason Tenders Dist. Council Welfare Fund v. One Ten Restoration, Inc.*, No. 13 Civ. 1879 (S.D.N.Y. Aug. 13, 2013) (*See* Dkt. No. 27-1; Dkt. No 27-2.)  The Court thus finds no reason it should not confirm Arbitrator Harris's award here.

**IV.    Conclusion**

For the reasons discussed above, Plaintiffs' motion to confirm the arbitration award is GRANTED.  The Clerk of Court is directed to close the motion at Docket Number 19 and to close the case.

SO ORDERED.

Dated:  November 16, 2016
            New York, New York

_____
J. PAUL OETKEN
United States District Judge